CRAIG T. WRIGHT, Appellee, v. PERCIVAL-PORTER COMPANY et al., Appellants.

**BROKERS:** Commissions—Excess in Selling Price as Commission—Deferred Payments—Interest—Who Entitled to. A principal assumes no personal liability to pay any commission to a broker who agrees (a) to so sell, at his own expense, the lands of the principal that the principal will realize a net minimum price, (b) to make all collections, and (c) to pay all of said collections to the principal up to a certain named amount, after which he—the broker—will retain, *as his sole commission*, such collections until they amount to a sum equal to one half of the excess over said minimum price. Such "excess" *belongs*, one half to the principal and one half to the broker, and therefore if, under other terms of the contract, the land is sold on deferred payments, the broker is likewise the owner of the interest paid on *his* said share of the excess.

*Appeal from Polk District Court.*—HUBERT UTTERBACK, Judge.

WEDNESDAY, MARCH 8, 1916.

ACTION in equity for an accounting. Decree as prayed, and defendants appeal.—*Reversed.*

*Nourse & Nourse,* for appellants.

*James P. Hewitt,* for appellee.

WEAVER, J.—The facts in this case are undisputed, and may be sufficiently stated in few words. On April 30, 1910, the plaintiff, being the owner of certain lands

BROKERS: commissions: excess in selling price as commission: deferred payments: interest: who entitled to.

in or near the city of Des Moines, entered into a written contract with the defendant Percival-Porter Company, constituting the latter his exclusive agent for the sale of said lands upon terms and conditions therein specifically stated. The agreement so made, after describing the lands, proceeds in words as follows:

"Said Percival-Porter Company agrees to advertise and show said lands to prospective purchasers at their own expense

and in lieu of all commissions on sales made agree to accept one half of the excess of $175.00 per acre as full commission and compensation, it being agreed that no sales of said land shall be made so as to net said Craig T. Wright less than $200.00 per acre. Where one third or more of the purchase price is paid in cash, said Craig T. Wright on request by purchaser will execute warranty deed to said land with abstract showing good and merchantable title and take back a mortgage for the unpaid purchase price with interest at the rate of 6% per annum. Where less than one third of the purchase price is paid in cash, said Craig T. Wright will execute to the purchaser, a contract for a deed and said Percival-Porter Company are hereby authorized to execute such contracts in the name of said Craig T. Wright by themselves as agent, receiving not less than $5.00 per acre cash and $2.50 each month thereafter on each acre purchased with interest at 6% from the date of sale, unless a different arrangement is made with the consent of said Craig T. Wright. Said Craig T. Wright hereby agrees to give said Percival-Porter Company the sale of said land upon the above terms and agrees to deed Lots 18-19 to the public for street purposes. It is hereby agreed that all moneys from the sale of said lands shall be collected by said Percival-Porter Company, said company remitting to said Craig T. Wright on or before the 10th day of each month money received during the preceding month. All money received in excess of $75.00 on each acre to be retained by said Percival-Porter Company until their share of profit over $175.00 per acre shall have been received, then the excess on each of said sales to go to said Craig T. Wright until the full amount due him on each sale is paid. In event of default being made on any contract, the amount of money paid thereon shall be divided equally between said Craig T. Wright and Percival-Porter Company. Said Craig T. Wright may terminate this contract December 1, 1911.''

It is admitted on the trial that, under the authority so conferred, defendants proceeded to sell the land, or parts

thereof, to different purchasers, at prices in excess of the minimum placed thereon by plaintiff. In each instance, a considerable proportion of the selling price was made payable in deferred interest-bearing installments, all of which, principal and interest, have been collected by the defendants. It is further admitted that defendants have accounted for and paid over to plaintiff all of the moneys so collected except that part of such collections to which they claim to be entitled as their share or part therein under the terms of the written contract; that is, they retain and claim as their own the one half of the excess of the selling price over the minimum of $175 per acre, together with the interest collected on such share from the purchasers. The plaintiff contests this claim only so far as the item of interest is concerned, and insists that the right of defendants to retain any part of the moneys so collected is limited to the one half of the excess of the selling price over the minimum of $175 per acre, without any part or share in the increment of interest. In other words, plaintiff construes the contract as one of employment or of ordinary agency, by the terms of which the defendants acquired no property interest in the lands or in the proceeds of sales made by them and maintains that their claim for compensation, though measured by the amount of their sales, was neither more nor less than a simple debt owed them by the plaintiff, and, as such debt was not payable until the proceeds of the sales had been collected, no interest had accrued thereon in defendants' favor, and they are not, therefore, entitled to retain any part of the interest paid by the purchasers. On the other hand, defendants take the position that, by the terms of the contract, their agency was coupled with a direct property interest in the proceeds of such sales as they should make, and that, upon making a sale pursuant to the authority so granted, they became, not the creditors of the plaintiff for the amount of a commission earned, but sharers with the plaintiff in the excess of the selling price over and above the stipulated minimum, and that, in so far

as such share constituted a part of the deferred payments, the interest accrued thereon belongs to them and not to the plaintiff. The item which constitutes the only matter in dispute between the parties amounts to $308.33, for which sum the trial court rendered judgment in favor of plaintiff, and defendants appeal.

On neither side has counsel cited the court to any authority or precedent for their respective claims, each relying upon what they deem to be the plain meaning and effect of the written agreement. The line of argument on behalf of the appellee is indicated by the following quotations from the brief filed in support of the conclusion reached by the trial court. Says counsel:

"The contract was one of employment, not of partnership. . . . All sums of money to be paid by the purchasers were owing to the plaintiff, not to the plaintiff and defendants jointly, for the plaintiff was the owner and the defendants were the agents and were so recognized. The purchasers owed the defendants nothing; the debt for defendants' services was owed by the plaintiff and by no one else."

If the contract were such as is ordinarily made or implied between the owner and the real estate agent or broker with whom land is listed for sale, the position thus taken would be impregnable, but the agreement before us, though by no means obscure, is not of that character. It provides: (1) That defendants shall have an exclusive agency for a fixed period of time; (2) that defendants assume the affirmative duty of advertising and exhibiting the lands at their own expense; (3) that, except as limited by a fixed minimum, the selling price is left to the defendants' discretion; (4) that in lieu of all commission charges defendants are to accept one half of the selling price obtained in excess of $175 per acre; (5) that defendants are to collect all the moneys to be derived from such sales or contracts of sale and, after paying the same over to plaintiff to the amount of $75 per acre, they

are to *retain* for themselves the excess beyond such sum "until their share of profit over $175 per acre" shall have been received, after which the remaining collections are to be accounted for to the plaintiff; and (6) that, if any purchaser or purchasers make default upon their contracts after paying any amount thereon, the money received upon such uncompleted sales is to be divided equally between the parties. Giving this agreement effect according to its terms, we cannot agree with counsel that the relation of debtor and creditor arises or can arise between plaintiff and defendants for the compensation which the latter are to receive for their services in selling the land. Indeed, the contract appears to have been carefully drawn to relieve the plaintiff from any responsibility whatever upon that score. Defendants are entitled to no compensation except as it is to be derived from the selling price above the stipulated minimum; and, as they assumed the duty of collecting the entire selling price of the lands from which they were to retain "their share of the profits over $175 per acre" and account to plaintiff for the remainder, it is manifest that the latter became charged with no duty or obligation with respect thereto. In other words, as between the parties, all the moneys collected upon any given sale, up to $75 per acre, belonged to the plaintiff, and defendants were bound to pay such collections to that extent without diminution; thereafter the collections belonged to the defendants until they had "received their share of the profits over $175 per acre," and after this had been realized, the remainder belonged exclusively to the plaintiff. Had the agreement been that plaintiff would pay defendants as their commission upon sales made the excess realized by *him* over a stipulated minimum selling price, a very different question would have been presented. That the defendants, by selling the land, were to acquire a right to an equal "share" with plaintiff in the "profits" of the transaction is expressly provided in the writing, and whether the price of the lands was received in cash or in the personal obligations of the purchasers on which the

money is ultimately realized can make no difference in the relative rights of the parties. In either case, the excess of the selling price over the minimum of $175 per acre is a common fund, and we can conceive no sound reason for holding that interest thereon belongs wholly to plaintiff. It is probably true, as argued by appellee, that the contract is not one of partnership, but it is equally apparent that it is not one of employment merely. It is rather a contract of agency to sell, in which the agents agree to accept as their compensation an equal share of the profits to be made over and above a fixed valuation of the property to be sold. Otherwise stated, it is an agreement of agency, coupled with a scheme of compensation having some of the features of a joint venture. Contracts of this nature are not unknown, but cases involving their judicial construction are few, except upon the question of the power of revocation by the owner. This court, however, is on record with a decision which in principle is in harmony with the views that we have expressed and which, if we are not to depart from its holding, necessitates a reversal of the judgment below. See *Van Gorder v. Sherman*, 81 Iowa 403. In that case, the owner of land entered into a contract granting to another an exclusive agency for one year to sell a certain tract of land. As in the case at bar, the agent was to make a sale which would net the owner a specified amount, and the agent was to receive as his compensation whatever amount he could realize in excess of that sum. The agent found a purchaser who was ready, able and willing to purchase the land at a valuation in excess of the minimum price reserved by the owner. The agent agreed with the purchaser to accept in cash so much of the consideration as was needed to pay the price which the owner had placed upon the land, and gave time for payment of the excess. On applying to the owner to carry out the contract of agency and make conveyance to the purchaser, it was found that the owner had sold the land to a third person and thus disabled himself to perform his agreement. The agent thereupon brought suit to recover

damages for the breach. Defending against this action, it was insisted that plaintiff was authorized to sell for cash only, and, it being conceded that he extended credit to the purchaser for part of the purchase price, he was entitled to no compensation. This objection, it will be seen, is directly in line with the position taken by the appellee herein. Overruling the point so made, the court there said:

"But it is difficult to see how it can be claimed that the terms of the contract extended to the money to be paid to the plaintiff. *It was his money* and he could at his pleasure relieve the purchaser from paying it. He surely could also extend to him the time for paying it."

A somewhat similar principle was recognized in *Wheeler v. Knaggs,* 8 Ohio 169. If this court was right in the *Van Gorder* case in saying that, when a sale was made by the agent for an amount greater than the fixed price, the excess "was *his* money," and he could either relieve the purchaser from paying it or extend credit for its payment, then surely in this case the specific part or share of the selling price to which appellants were entitled under the contract was *their* money, and any interest earned thereon was theirs as well.

Counsel for appellee seems to think that the fact that the contract does not require the defendants to bear any part of the "carrying charges" of plaintiff's investment in the land has some tendency to show that the parties did not intend that any interest should be allowed to defendants' share in the profits; but we see no room for any such inference. The only carrying charges suggested were the accruing taxes, and possibly interest upon the money put into the investment, and it may be taken for granted that, in making a minimum selling price upon the property and providing for half the profits beyond that point, plaintiff did not overlook the necessity or propriety of naming a figure which would amply cover all such charges and contingencies. Nor is it material that the contracts of sale were made in the name of the plaintiff by defend-

ants as his agents, if such were the fact. The rights of the plaintiff on the one hand and of defendants on the other, as between themselves, are governed by the agency contract alone, and this provides for an equal sharing of the "profits over $175 per acre." To hold that plaintiff is entitled not only to one half the profits, but also to all the interest accumulated upon the entire profits, would be to destroy the equality for which the contract provides. As the collection of all the money arising from these sales was to be made by defendants, who were to retain their agreed share thereof, the sale contracts, whether made in the name of plaintiff or defendants, and the moneys received thereon, were held by defendants as a trust fund for division between themselves and plaintiff upon the basis of their contract. The sales once made, the agency, so far at least as related to the lands sold and the proceeds of such sales, could not have been revoked by the plaintiff, nor could he rightfully have taken from defendants their authority to collect the unpaid installments and retain to themselves their agreed share thereof.

It is well here to again recall the evident purpose of the plaintiff to assume no personal liability upon the contract, except it be to make conveyance of the land when sold upon the authorized terms. He did not promise or agree to pay defendants commissions or compensation of any kind, but, having fixed the figure at which he was willing to make such sales, he gave defendants free rein to sell at any obtainable price above that figure, stipulating only for an equal division of the profits so made and for the retention by defendants of their share. We think it follows that, whenever a valid sale was made, the equal rights of the parties attached instantly to the profit so earned, although, where the sale was made on contract for deferred payments, the actual division of such profit was postponed until the time therefor was matured by collections made from the purchaser. If this be correct, then plaintiff is entitled to no greater share of the interest

than of the principal fund upon which it accrued, and the finding of the trial court to the contrary was erroneous.

For the reasons stated, the judgment below is reversed, and cause will be remanded for the entry of judgment for the defendants for costs.—*Reversed.*

EVANS, C. J., DEEMER and PRESTON, JJ., concur.